**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LAKEITH AMIR-SHARIF, #05081644,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:06-CV-0081-B |
| | ) | ECF |
| **DALLAS COUNTY, et al.,** | ) | |
| Defendants. | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court in implementation thereof, this cause has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a civil rights complaint brought by a county inmate pursuant to 42 U.S.C. § 1983.

Parties: Plaintiff is presently incarcerated at the Dallas County Jail in Dallas, Texas. Defendants are Dallas County, Sheriff Lupe Valdez, Medical Director Dr. Steven Bowers, Commissioner Court Members Kenneth Mayfield, Mike Cantrell, and Margaret Keliher, and the University of Texas Medical Branch (UTMB). The Court did not issue process in this case, pending preliminary screening.

Statement of Case: On January 12, 2006, Plaintiff filed this *pro se* action on the civil rights complaint form complaining that Dallas County and its political entity and employees had failed to appropriate sufficient funds to operate the Dallas County Jail in a humane and

constitutional manner. Specifically he complained of deliberate indifference to his medical conditions during three periods of incarceration at the Dallas County Jail: (1) from February 10, 2005, following his initial arrest and incarceration, until May 25, 2005, when he was transferred to Big Spring State Hospital for a competency evaluation; (2) from August 18, 2005, when he returned to the Dallas County Jail having been found competent to stand trial, until his release on September 1, 2005, having fully served his sentence; and (3) from October 11, 2005, when he was re-arrested on new charges, until the filing of the complaint in January 2006. According to Plaintiff, Defendants failed to monitor and provide necessary medications for his chronic conditions (epilepsy, asthma and bi-polar disorder), and for injuries to his hip, leg, face, and head sustained prior to his incarceration in February 2005. He sought monetary, declaratory and injunctive relief.[1]

On March 13, 2006, the Court ordered the Dallas County Sheriff Department to conduct an investigation into Plaintiff's allegations and prepare a <u>Martinez</u> Report, which was in turn filed on April 19, 2006.[2] A copy of the report was provided to Plaintiff, who was given an opportunity to file a response, but failed to do so.

<u>Findings and Conclusions</u>: The Court has permitted Plaintiff to proceed *in forma*

---

[1] On January 20, 2006, Plaintiff filed a second civil rights complaint challenging the conditions of confinement at the Dallas County Jail on his behalf and on behalf of all similarly situated detainees. See <u>Amir-Sharif v. Dallas County</u>, 3:06cv0143-K (N.D. Tex., Dallas Div.) (referred to Magistrate Judge Stickney). On March 6, 2006, he filed a third complaint challenging an excessive force incident on May 8, 2005, by Officer Jay Abell, the denial of medical care for injuries to his arm following the excessive use of force, and the failure to train and supervise Officer Abell. See <u>Amir-Sharif v. Valdez, et al.</u>, 3:06cv0408-M (N.D. Tex., Dallas Div.) (referred to Magistrate Judge Sanderson).

[2] <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978).

*pauperis* (IFP). His complaint is, thus, subject to screening under 28 U.S.C. § 1915A, which imposes a screening responsibility on the district court. Section 1915A reads in pertinent part as follows:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

28 U.S.C. § 1915A(a) and (b) (emphasis added). See also 28 U.S.C. § 1915(e)(2)(B).[3]

Sections 1915A(b), 1915(e)(2)(B), and 1997e(c) provide for *sua sponte* dismissal if the Court finds that the complaint is "frivolous" or that it "fails to state a claim upon which relief may be granted." A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).[4]

---

[3] 42 U.S.C. § 1997e(c)(1) also provides that "[t]he court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."

[4] While exhaustion of administrative remedies is mandatory, see 42 U.S.C. § 1997e(a), Plaintiff appears to have alleged sufficient inadequacies in the grievance procedure at the Dallas County Jail to pass screening. (See Complaint at p. 2 ¶ III).

1.        <u>Defendants</u>

Plaintiff seeks to sue Dallas County in connection with the alleged failure to provide adequate medical care. A local government entity such as a county or municipality cannot be held liable for a constitutional violation under a theory of vicarious liability or *respondeat superior*. See <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978). Instead, liability may be imposed "only where the municipality itself causes the constitutional violation at issue." <u>Board of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 403-404 (1997); <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). To prevail on a § 1983 claim against a municipality, the plaintiff must therefore demonstrate that the city or county acted pursuant to a policy or custom that was the cause of an alleged deprivation of rights protected by the Constitution. <u>Bryan County</u>, 520 U.S. at 403. The Fifth Circuit has defined a "policy or custom" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

<u>Burge v. St. Tammany Parish</u>, 336 F.3d 363, 369 (5th Cir. 2003) (quoting <u>Bennett v. City of Slidell</u>, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc* and *per curiam* )). The Fifth Circuit has also specifically held that a plaintiff must demonstrate actual or constructive knowledge of the custom attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. <u>Burge</u>, 336 F.3d at 370.

The complaint alleges that Dallas County permitted jail officers to deny or delay medical

4

care. Such conclusory allegations are insufficient to satisfy Plaintiff's burden of pleading that the County acted pursuant to a policy or custom that was the cause of an alleged deprivation of constitutional rights. By failing to allege facts that suggest actual or constructive knowledge of the custom attributable to Dallas County, Plaintiff has not pled sufficient facts necessary to trigger liability. In the instant case, the only connection between the alleged acts of the individuals who denied or delayed medical care and Dallas County is the fact of their employment. This is clearly insufficient to establish liability under section 1983 against Dallas County. As such Plaintiff's § 1983 cause of action against Dallas County should be dismissed with prejudice as frivolous.

Plaintiff's claims against Sheriff Valdez and Jail Medical Director Bowers should likewise be dismissed as frivolous. To be liable under § 1983, an individual must be personally involved in the acts causing the deprivation of a person's constitutional rights. See Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). It is well settled that supervisory officials cannot be held vicariously liable for their subordinates' actions under § 1983. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Bigford v. Taylor, 834 F.2d 1213, 1220 (5th Cir. 1988); Thibodeaux v. Arceneaux, 768 F.2d 737, 739 (5th Cir.1985) (per curiam). Supervisory officials may be held liable only if they (i) affirmatively participate in acts that cause constitutional deprivation, or (ii) implement unconstitutional policies that causally result in plaintiff's injury. See Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Grandstaff v. City of Borger, 767 F.2d 161, 169-70 (5th Cir. 1985).

The complaint fails to provide any details as to Sheriff Valdez's and Director Bowers' personal involvement, if any, in the alleged denial or delay of medical care. Nor does the

complaint provide sufficient facts to allege that the Sheriff and/or Medical Director personally implemented a custom or policy the caused the denial of medical care at issue in the complaint.

Plaintiff's complaint also fails to allege a sufficient causal connection between the Commissioners' alleged conduct and any constitutional violation. See Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir.1987). "As a prerequisite [to § 1983 liability], a plaintiff 'must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.'" Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005) (quoting Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995)); see also Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983) (same). Therefore, the claims against the Dallas County Commissioners lack an arguable basis in law and should be dismissed as frivolous.

Insofar as Plaintiff seeks to sue UTMB, the provider of medical services at the Dallas County Jail, his claims fare no better. UTMB is an agency of the State of Texas. See Sampson v. United States, 73 Fed.Appx. 48, 49, 2003 WL 21919906, *1 (5th Cir. 2003) (unpublished per curiam); O'Rourke v. United States, 298 F.Supp.2d 531, 535-536 (E.D.Tex. 2004); Broughton v. Bowles, et al., 3:04cv1310-L (N.D. Tex., Dallas Div., Dec. 30, 2004) (adopting findings, conclusions and recommendation of the magistrate judge). As such, it is immune to suit in federal court under the Eleventh Amendment of the United States Constitution. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309-10, 105 L.Ed.2d 45 (1989); Aguilar v. Texas Dept. of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (the Eleventh Amendment bars suit against a state or a state entity regardless of whether money

damages or injunctive relief is sought); see also Briggs v. Mississippi, 331 F.3d 499 (5th Cir. 2003).

2.   Medical Care Claims

Even assuming Plaintiff had adequately pled a custom or policy or sufficient personal involvement to sue the Defendants named in the complaint, his claims of denial or delay of medical care lack an arguable basis in law and should be dismissed as frivolous. To state a colorable claim under the Eighth Amendment for denial of medical care, convicted inmates must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." Norton, 122 F.3d at 291. It occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837-840, 114 S.Ct. 1970, 1979-80, 128 L.Ed.2d 811 (1994).[5]

   A.   Initial Incarceration -- from February 11 until May 25, 2005

Plaintiff complains of deliberate indifference to his pre-existing chronic conditions (epilepsy and asthma). He alleges Defendants failed to examine, monitor and provide medications for his pre-existing conditions, although he had appraised the book-in officer that he

---

[5] Although Plaintiff was a pretrial detainee during some of the events in question, the same standard applies to his claims of denial of medical care under the Due Process Clause of the Fourteenth Amendment. Wagner v. Bay City, Tex., 227 F.3d 316, 324 (5th Cir.2000); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996). "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care. Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001).

suffered from asthma, seizures, and bi-polar disorder. As a result of the denial of medical care, Plaintiff endured a "gran mal seizure," on May 23, 2005, which caused one of his front tooth to become loose. According to Plaintiff, no care was provided following the seizure, except for minor attention in the infirmary. (Complaint at 4A-D).

In addition to failing to provide any care for his chronic conditions, Plaintiff alleges defendants failed to treat serious injuries to his hip, leg, face, and head, which he had suffered prior to his incarceration and for which he had been treated at RMH Memorial Hospital before book-in at the Dallas County Jail.

The Martinez Report reflects that on March 16, 2005, thirty-three days after his initial book-in, the nursing staff at the Dallas County Jail saw Plaintiff for the first time because of complaints of a fractured nose, which had occurred before his incarceration. During this evaluation, Plaintiff informed the nurse that he suffered from asthma. An x-ray of his facial bones was ordered, and Plaintiff was prescribed Albuterol inhaler for his asthma, and Ibuprofen 600 mg for pain. On March 18, 2005, the nursing staff again saw Plaintiff, this time because of fears that he was going to have a seizure. Plaintiff informed the nurse that prior to his incarceration he took Tegretol 200 mg. for seizures, and that he had been without that medication since his incarceration. Doctor Holbrook immediately prescribed Tegretol 200 mg., 1 tab per day. On March 24, 2005, following the seizure alleged in the complaint, Plaintiff informed the nurse that he was receiving the wrong dose of the seizure medication. Dr. Holbrook increased Tegretol 200 mg to two tabs daily, and added Dilantin, an anti-epileptic medicine. One hour following the above evaluation, Plaintiff was seen once again for "seizure like movements," and was given an additional Tegretol and Dilantin tablets. On March 28,

2005, Plaintiff was seen for headaches and dizziness. He was given Motrin 200 mg. for headache and was able to eat breakfast and go to court.

Accepting as true the allegation as to the delay in providing medical care for his asthma and epilepsy and resolving all disputed facts in his favor conditions, Plaintiff cannot raise a claim cognizable under § 1983. Delay in providing medical care does not give rise to a constitutional violation unless the deliberate indifference of the medical staff results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). While Plaintiff endured delays of at least 33 and 35 days respectively in first receiving Albuterol for his asthma, and Tegretol for his epileptic seizure, his injuries were not life threatening. Plaintiff's own allegations concede that he suffered only a loose tooth as a result of the "gran mal seizure" on March 23, 2005. (Complaint at 4A-D).[6] Following the March 23 seizure, the level of Tegretol was increased and Dilantin was prescribed. Under these circumstances, Plaintiff's claims of delay in monitoring and providing medical care for his pre-existing asthma and epilepsy conditions do not amount to a constitutional violation.

Nor does Plaintiff's claim of delay in seeing a dentist for his loose tooth because of pain, rise to a constitutional violation. Apart from pain which prompted him to try to pull the loose tooth, Plaintiff has not alleged a substantial harm as a result of the delay in seeing a dentist. (Complaint at 4-D).

In addition to delay, Plaintiff disagrees with the type of treatment that he received following his seizure on March 23. He states that prescribing Tegretol was inadequate, and that

---

[6] The alleged broken tooth is not reported in the clinic notes.

9

only an IV could have "ensure[d] that after 35 days without his anti-seizure medications, his medication level would be restore[d] to the appropriate level medically necessary to help prevent further seizures from occurring." (Complaint at 4-C). He also states that Dilantin was the wrong medication for his condition. (Complaint at 4-E). A disagreement of opinion as to the correct medication and/or medical treatment does not constitute an actionable civil rights claim, but at most, a possible claim of medical malpractice appropriately addressed under state law. E.g. Estelle, 429 U.S. at 107-108; Norton, 122 F.3d at 292; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Fielder v. Bosshard 590 F.2d 105, 107 (5th Cir. 1979).

Next Plaintiff complains of not receiving his anti-seizure medications twice a day as prescribed due to inaccurate records and staffing shortages. (Complaint at 4-D). Accepting this allegation as true, it amounts at the most to negligence, which is not cognizable under § 1983. See Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986); Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Insofar as Plaintiff complains of being denied medical care for pre-existing leg, face and head injuries treated at RMH Memorial Hospital before his incarceration, his claim is conclusory at best and fails to raise a constitutional claim. The complaint fails to specify the type of injuries that he had sustained before his incarceration, the treatment provided at RMH Memorial Hospital, and what treatment if any the Dallas County Jail could and should have provided. Moreover, the Martinez Report reflects that on April 15, 2005, Plaintiff's facial bones were x-rayed, and a possible hairline fracture was noted. (Martinez Report, Dr. Skinner's Evaluation at 2). Otherwise, the x-rays were normal. (Id.).

Plaintiff appears to complain of being denied Geodone, a psychotropic medication for his

10

bi-polar disorder, during his initial incarceration at the Dallas County Jail. (Complaint at 4-E). Contrary to his allegations, the Book-in Sheet from February 11, 2005, does not identify bi-polar disorder as a pre-existing medical condition, or that Plaintiff was taking Geodone or other psychotropic medications at the time of his arrest. (<u>Martinez</u> Report at Jail Records, Booking Sheet 2/11/05). Nevertheless, on March 11, 2005, Plaintiff was referred for mental health screening. The Psychiatric Notes reflect that prior to his incarceration he had been a patient at Dallas Metrocare Services, Mental Health and Mental Retardation, and that he was last seen at the Altshuler AMH Clinic in Dallas on December 16, 2004, where he had been prescribed Geodon, Hydrogyzine, and Trazadone for his mental condition. (Dallas County Jail Psychiatric Notes dated 3/11/05). On March 30, 2005, a mental health evaluation was conducted and Plaintiff was referred to a psychiatrist. (Treatment Plan dated 3/30/05). It appears that Plaintiff was never evaluated by a psychiatrist and that on May 25, 2005, he was transferred to Big Spring State Hospital for a competency evaluation. According to Plaintiff, the medical staff at Big Spring addressed all of his medical needs and prescribed Geodon for his bi-polar and/or schizoaffective disorder. Plaintiff, thereafter, was found competent to stand trial and was returned to the Dallas County Jail on August 18, 2005.

Accepting as true Plaintiff's allegation as to the delay in scheduling him for a psychiatric evaluation and in prescribing Geodon for his bi-polar and/or schizoaffective disorder, Plaintiff has failed to raise a claim cognizable under § 1983. Delay in providing medical care does not give rise to a constitutional violation unless the deliberate indifference of the medical staff results in substantial harm. <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff's complaint is devoid of any allegations that he suffered any injuries as a result of the

delay in receiving a psychiatric evaluation and Geodon for his mental condition. Plaintiff further concedes that on May 25, 2005, he was transferred to Big Spring State Hospital where all his medical and psychiatric needs were addressed. Under these circumstances, Plaintiff's claims of denial or delay in providing Geodon for his schizoaffective and/or bi-polar disorder do not amount to a constitutional violation.

### B.     Return from Big Spring State Hospital – August 18 until September 1, 2005

Upon his return to the Dallas County Jail from Big Spring State Hospital, Plaintiff alleges that his medications, including Geodon for his bi-polar or Schizo-affective disorder, were turned into the nurse and he was, thereafter, denied all medications until his release from the Dallas County Jail on September 1, 2005.

The Martinez Report reflects that on August 24, 2005, six days following his return from Big Spring State Hospital all of Plaintiff's medicines (including Dilantin and Tegretol for seizure, and Geodon for Schizophrenia) were reinstated. See Martinez Report, MH-Clinic Note for 8/24/05; and Medication Administration Record for August 2005. It appears Plaintiff continued with these medications until his release from the Dallas County Jail on September 1, 2005.

Accepting as true Plaintiff's allegations, he has alleged no harm as a result of the six-day delay in providing him with his prescription medications. As a result, Plaintiff's allegations do not rise to a constitutional violation. See Mendoza, 989 F.2d 191, 195 (5th Cir. 1993).

### C.     Re-arrest and Incarceration from October 11, 2005, until Filing of Complaint

In his last ground, Plaintiff complains of the denial of all prescription medications from

12

his re-arrest on new charges on October 11, 2005, until the filing of the complaint in this case on January 12, 2006. (Complaint at 4-K). Accepting this allegation as true, Plaintiff has failed to raise a claim of deliberate indifference to a serious medical need. Plaintiff's allegation is wholly conclusory. He fails to provide any details as to whether he advised Defendants that he was not receiving his medications, and whether he suffered any side effects as a result of being denied his medications. Moreover it appears from the Martinez Report that Plaintiff was prescribed Tegretol, Dilantin, and Geodon shortly after his re-arrest on October 11, 2005, but that he repeatedly refused to take his medications because he claimed he did not need them. See Martinez Report, Medical Records at MH-Clinic Notes dated 10/18/05, 10/28/05, 11/16/05, 12/30/05, 1/4/06, and 3/2/06. Accordingly, this claim should be dismissed with prejudice as frivolous.

3.      Pending Motions

Presently before the Court are Plaintiff's motions to appoint counsel filed March 6, 2006, for clarification of court filing fee order filed March 23, 2006, for production and inspection of emergency room discharge/after care instructions filed April 20, 2006, to compel Sheriff to acknowledge emergency grievances, filed on May 17, 2006, and for temporary restraining order and/or permanent injunction filed on May 25, 2006. All motions, except for the motion for production and inspection, were filed in this case as well as in No. 3:06-CV-0143-K.

On January 31, 2006, the Court informed Plaintiff that no motions for appointment of counsel should be filed until the Court had completed its statutory screening function. (See Filing fee Order at ¶ 7). This is Plaintiff's second motion seeking the appointment of counsel. A plaintiff in a civil rights action is not entitled to court appointed counsel as a matter of law.

13

Akasike v. Fitzpatrick, 26 F.3d 510, 512 (5th Cir. 1994); Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982) (same).  Moreover, Plaintiff has not shown that his case presents any exceptional circumstances warranting the appointment of counsel.  See Ulmer, 691 f.2d at 212 (the trial court is not required to appoint counsel for an indigent plaintiff asserting a claim under 42 U.S.C. § 1983, unless the case presents exceptional circumstances).  Therefore, his second motion for appointment of counsel should be denied.

Plaintiff's March 23, 2006 motion seeks clarification of the Court's filing fee order filed on January 31, 2006.  This Court previously advised Petitioner about the Prison Litigation Reform Act (PLRA), and that the filing fee applies on a per case as opposed to on a per prisoner basis.  See May 5, 2006 order denying motion to stop violation of the PLRA.  Therefore, this motion should be denied.

Plaintiff's motion for production of documents was filed in contravention of the January 31, 2006 order, staying discovery pending screening of the complaint.  (See Filing fee Order filed January 31, 2006, at ¶ 6).  As a result, it should be denied.

Lastly, in his motion to compel, Plaintiff complains that the Dallas County Jail repeatedly refuses to acknowledge and respond to his emergency grievances, which relate to the general conditions of his confinement.  In his motion for a temporary restraining order and/or a preliminary injunction, Plaintiff complains about a recent cell transfer.  Since the above claims relate to the general conditions of Plaintiff's confinement, the Court will address them in No. 3:06cv0143-K.  Accordingly, the motions should be denied as far as this case is concerned.

RECOMMENDATION:

For the foregoing reasons, it is recommended that Plaintiff's complaint be dismissed with prejudice as frivolous. See 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i), and 42 U.S.C. § 1997e(c)(1).

It is further recommended that Plaintiff's motions to appoint counsel, for clarification of court filing fee order, for production and inspection, to compel, and for temporary restraining and permanent injunction (Docket # 14, 27, 28, 33, and 35) should be denied.

A copy of this recommendation will be mailed to Plaintiff.

Signed this 8th day of July, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.